## WILLOUGHBY v. MACKALL.

### ATTORNEY AND CLIENT ; CONTRACTS.

1. *Willoughby* v. *Mackall*, 1 App. D. C. 411, construing a contract between attorney and client, *approved* and *followed*.
2. Where an agreement between attorney and client provided that the attorney should have a lien for his fee upon whatever real estate might be *recovered* in three suits in which the title was involved, it was *held* that the agreement should be liberally construed and the lien should attach to whatever property the title of which should be vested in the client as the result of the litigation.

No. 361. Submitted December 4, 1894. Decided January 8, 1895.

HEARING on an appeal by the complainant from a decree dismissing a bill to establish a lien on certain real estate. *Reversed.*

The FACTS sufficiently appear in the opinion.

*Mr. A. A. Birney* for the appellant.

*Mr. Henry E. Davis* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is the second appeal in this case. The first was by the plaintiff, Westel Willoughby, from a decree sustaining a demurrer to his bill. *Willoughby* v. *Mackall*, 1 App. D. C. 411. We then held, reversing the decree below, that the plaintiff, Willoughby, was entitled, under the agreement sued

on, to a fee of $5,000, and to have the same declared a lien upon all the property that may have been recovered in the three cases named in said agreement, as Nos. 2373, 8118, and 8184, on the docket of the Supreme Court of the District of Columbia, in which he had acted as counsel for the defendant, Brooke Mackall. After the cause was remanded, defendant Mackall answered the bill and filed a cross-bill, in which he attacked the agreement as having been extorted by duress and undue advantage. Upon the hearing both the bill and cross-bill were dismissed and plaintiff alone has appealed. Our opinion remaining unchanged as to the proper construction of the agreement, the only question to be considered is, whether any property was in fact recovered in any of the cases aforesaid, in the sense of the word as used in the agreement, to which the lien for the security of plaintiff's fee could rightfully attach. It appears from the evidence that Mackall once had title to what is known as lot 7, in square 223, fronting on New York avenue and Fourteenth street, in the city of Washington, as shown in the accompanying plat, within the lines A, C, E, F:

Many years ago, Mackall had a house built at the corner C, which is called throughout the litigation the Palace

Market. Two separate mechanics' liens were foreclosed upon a part of the lot, including the Palace Market, and under these, and a judgment at law against Mackall, owned by one Alfred Richards, the marshal undertook to make a sale of part of the lot. Richards became the purchaser for an amount which paid off the mechanics' liens and a part of his judgment. He took possession of the building, and claimed and exercised in certain ways possession of part of the unoccupied lot. The description of the lot, as sold and conveyed by the marshal to Richards, was very inaccurate and uncertain. He claimed, under said deed, all that portion of the lot within the lines A, C, D, G.

On May 2, 1871, Richards, claiming the unpaid balance on his judgment, joined with other judgment creditors of Mackall in filing a creditor's bill against him to subject all of lot 7, "not before sold by the marshal," to their judgments. This is cause numbered 2373. Mackall did not deny the recovery of the judgments, but set up certain defenses thereto, not necessary to mention, and denied having an equitable title to the lot, etc. May 1, 1873, a decree was passed to the effect that said Mackall had title to all of the said lot not sold by the marshal, and trustees were appointed to make sale thereof in satisfaction of the judgments of the plaintiffs. This decree was affirmed on appeal to the Supreme Court of the United States. The trustees made a sale which was set aside upon exceptions to their report, and the court then made another decree, attempting to settle the lines of the marshal's conveyance, and ordering sale of " all that part of lot 7 in square 223, lying south of a line drawn from a point on Fourteenth street, 44 feet south of the northeast corner of said lot, and running thence parallel to the line of New York avenue to the west line of the said lot ; this decree to be construed as not determining any question of title to any portion of said lot 7, lying north of said line." The plaintiff Willoughby was not retained in this litigation until after the foregoing sale was made, and

he represented Mackall in the exceptions to that report and in all the subsequent litigation. The effect of the foregoing decree, made by the General Term, was to fix the area of the lot conveyed by the marshal to Richards within the boundaries A, C, D, G, without, however, determining whether that conveyance was valid.

On November 24, 1884, the Supreme Court of the United States, to which that decree had been appealed, reversed it, holding that the proper boundary line of the conveyance by the marshal was the line of the walls of the Palace Market building, viz, B, C, D, H, and ordering the sale to be made of all the lot outside thereof. The court declined to express an opinion as to the validity of the marshal's sale to this smaller part of the lot, because not properly involved in the case. *Mackall* v. *Richards*, 112 U. S. 369. Whilst this suit was not for the settlement of the title or the recovery of possession of the lot, or any part thereof, its necessary result was to settle the question of title in Mackall's favor to all that part of the lot outside the walls of the Palace Market, leaving the final title to that part unsettled. The decision was conclusive of Richards' title under the marshal's deed, his only claim of title to the remainder of the disputed lot, which is comprised within the lines A, B, H, D, G. In the statement of the case before the court, Mr. Justice Harlan said : " This suit involved the title to that part of square 223, in the city of Washington, designated as lot 7," &c. (page 369).

Before this case was determined, to wit, April 11, 1882, Mackall instituted suit No. 8118, in equity, to set aside the marshal's deed under which Richards claimed the Palace Market and all of the lot contained in the parallelogram A, C, D, G, and to recover possession and the mesne profits thereof. This bill was dismissed in special term, but sustained on appeal to the General Term, from whence Richards appealed to the Supreme Court of the United States. That court, without inquiry into the merits, reversed the decree of the General Term, and ordered the bill dismissed because

of complainant's laches in the institution of his suit. *Richards* v. *Mackall*, 124 U. S. 183.

Cause No. 8038 is of no importance in the present case. The practical result of all of the litigation was, then, to settle in Richards, as against Mackall, the title to the lot on which the Palace Market building stands, B, C, D, H, and in Mackall, as against Richards, the title to all of that part of the lot contained in the lines A, B, H, D, G. This part of the lot has been estimated to be worth about $50,000.

Whilst Willoughby's right to the sum of $5,000 as a fee for his services in all of this litigation is not now denied, it is contended, and was so held in the court below, that his lien therefor is limited to such property as was actually recovered, and cannot attach to this lot or any part of it, because it was not actually *recovered* in any one of said suits, the only suit for actual recovery being No. 8118, aforesaid, which was defeated, as we have seen.

We think that the word recovered should not be so restricted in its meaning. There is no reason why the agreement should not be liberally construed. Its object was to give Willoughby a lien on the property which might be recovered; that is to say, secured or realized, by and through the litigation conducted by him, offensive and defensive. Richards recognizing, as he was bound to do, that the title to the lot, outside the walls of the building, had been settled adversely to his claim, abandoned any possession he might have had and submitted it to Mackall. Mackall entered without opposition, and has since held peaceable, undisturbed and unquestioned possession. In the general sense of the word, he actually recovered his land through the services rendered by Willoughby in cause No. 2373. He failed of recovery in 8118, through which he lost the title to the Palace Market lot, and Willoughby lost the contingent interest in the mesne profits expected to be recovered therein, in addition to the land. Willoughby's fee, to the extent of the $5,000 claimed, was not contingent, but certain and fixed.

Having, as a matter of fact, through success in No. 2373, settled the title to a very valuable part of the lot, and enabled Mackall to retake peaceable possession thereof, without further litigation necessary to assure him therein, we think his lien attached thereto under the construction of the contract declared on the former appeal, and which is adhered to.

*The decree must be reversed, with costs to the appellant, and the cause remanded to the court below, with direction to pass a final decree, in accordance with the foregoing opinion. And it is so ordered.*